UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RODNEY BRADY,

                              CASE NO. 2:09-CV-13365
        Plaintiff,        JUDGE GERALD E. ROSEN
                              MAGISTRATE JUDGE PAUL J. KOMIVES

v.

CARY ALVARADO,

        Defendant,
_____/

## REPORT AND RECOMMENDATION REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. Ent. 12) & PLAINTIFF'S MOTION FOR APPOINTMENT OF COUNSEL (Doc. Ent. 13)

**I.    RECOMMENDATION:** The Court should grant defendant's motion for summary judgment (Doc. Ent. 12), dismiss this case without prejudice, and deny plaintiff's motion for appointment of counsel (Doc. Ent. 13) without prejudice.

**II.    REPORT:**

**A.    Instant Case[1]**

---

[1] Plaintiff appears to be a party to six (6) cases originating in this Court: **(1)** *Brady v. Powers*, Case No. 5:08-cv-12892, filed on July 8, 2008 and transferred to the Western District of Michigan on January 19, 2010 (Case No. 1:10-cv-00045); **(2)** *Brady v. Does*, Case No. 2:08-cv-13534, filed on August 15, 2008 and transferred to the Western District of Michigan on August 22, 2008 (Case No. 1:08-cv-00821); **(3)** *Brady v. Ingham County Correctional Facility*, Case No. 2:08-cv-13623, filed on August 21, 2008 and transferred to the Western District of Michigan on August 28, 2008 (Case No. 1:08-cv-00839); **(4)** *Brady v. Nolan*, Case No. 1:08-cv-14481, filed on October 21, 2008 and transferred to the Western District of Michigan on March 3, 2009 (Case No. 1:09-cv-00186); **(5)** *Brady v. Scottek*, Case No. 2:10-cv-10375, filed on January 27, 2010 and undergoing service by the U.S. Marshal; and **(6)** *Brady v. Funches*, Case No. 2:10-cv-10831, filed on March 1, 2010.

Plaintiff also appears to have been a party to several cases in the Western District of Michigan: **(1)** *Brady v. Trombley*, Case No. 1:08-cv-00995, filed October 24, 2008 and judgment entered on September 23, 2009; **(2)** *Brady v. Dagen*, Case No. 1:08-cv-01133, filed December 16,

1

Plaintiff Rodney Brady is currently incarcerated at the G. Robert Cotton Correctional Facility (JCF) in Jackson, Michigan.[2]  On August 12, 2009, while incarcerated at the Charles Egeler Reception & Guidance Center (RGC) in Jackson, Michigan, plaintiff filed the instant case in the Western District of Michigan (Case No. 1:09-cv-00739) against RGC C/O Cary Alvarado in his official and personal capacities.  Doc. Ent. 1.  In the statement of claim, plaintiff mentions an incident involving Alvarado which allegedly took place during plaintiff's prior period of incarceration.  Plaintiff claims he was re-incarcerated for a parole violation, and he describes alleged threats and harassment by Alvarado, among which are the allegations that Alvarado has "call[ed] [plaintiff] a snitch around other inmates[,]" which places plaintiff in danger, and that Alvarado said, "[I] ha[ve] friend[s] everywhere[.]"  Doc. Ent. 1 at 3.  According to plaintiff, he has "tried talking to the Warden [and] RUMs and the Inspector on this issue but [has not] gotten any response[.]"  Doc. Ent. 1 at 3-4.  Therefore, plaintiff contends, he has filed this complaint.  Doc. Ent. 1 at 4.  Plaintiff seeks to be transferred from Alvarado's location and to receive an award of $10,000 for pain, suffering and mental stress.  Doc. Ent. 1 at 5.[3]

Plaintiff also filed an "Authorization for Withdrawal of Funds to Pay the Civil Action Filing Fee and Affidavit of Indigence in Support of Request to Proceed *In Forma Pauperis*."

---

2008 and judgment entered on December 23, 2008; and **(3)** *Brady v. Deman*, Case No. 1:09-cv-00762, filed on August 19, 2009 and dismissed without prejudice on October 16, 2009.

[2]On February 11, 1998, Brady was sentenced to three (3) to twenty (20) years for a violation of Mich. Comp. Laws § 750.110a(2) (1st Degree Home Invasion).  In his August 12, 2009 complaint, plaintiff contends he is "just a parole violator."  Doc. Ent. 1 at 5.  Based on the image date in the MDOC's "Offender Search," it appears plaintiff was re-incarcerated on July 30, 2009.  See www.michigan.gov/corrections, "Offender Search."

[3]Plaintiff claims he is "very sick with high blood pressure and chronic headaches[.]"  All of this, he claims, "keep[s] [his] blood pressure up and [he is] having more headaches [than he] usually [has due] to the threats and [harassing] that [Alvarado] is doing and causing[.]"  Doc. Ent. 1 at 5.

Doc. Ent. 2.[4]  On August 19, 2009, this case was transferred to the Eastern District of Michigan. Doc. Ent. 3.  Magistrate Judge Brenneman's order notes that the Court had not decided plaintiff's motion to proceed *in forma pauperis*, nor had it reviewed the complaint under 28 U.S.C. §§ 1915(e)(2), 1915A, or under 42 U.S.C. § 1997e(c).  Doc. Ent. 3 at 2.

On September 11, 2009, Judge Rosen entered an order directing service of the complaint and directing defendant to address the question of whether plaintiff may proceed without prepayment of the fees and costs for this action.  Doc. Ent. 5.  On October 21, 2009, defendant filed a response to plaintiff's motion to proceed in forma pauperis.  Doc. Ent. 10.  On November 17, 2009, Judge Rosen entered an order (1) granting defendant's motion to amend the caption, (2) granting plaintiff's application to proceed without prepayment of the fees and costs for this action,[5] and (3) directing defendant to file an answer to the complaint.  Doc. Ent. 11.

---

[4]*See* http://www.miwd.uscourts.gov/FORMS/cmpref.pdf.

[5]Although Judge Rosen's November 17, 2009 order recognized that "[t]hree or more of Plaintiff's prior complaints have been dismissed as frivolous or for failure to state a claim[,]" he ultimately concluded that "the complaint's allegations [were] sufficient to invoke the exception to § 1915(g)."  Doc. Ent. 11 at 2-3 (citing *Brady v. Nolan*, Case No. 1:09-cv-00186 (W.D. Mich. Mar. 17, 2009)).

Apparently, plaintiff still believes he is "under imminent danger of serious physical injury[,]" 28 U.S.C. § 1915(g), even though he is now incarcerated at JCF.  On April 6, 2010, plaintiff filed a "motion to place penalties on the above defendant for wilful violation of law."  Doc. Ent. 18. Plaintiff cites Mich. Comp. Laws §§ 19.141 ("Authority for regulation of care, preservation, and protection of state buildings") and 19.142 ("Offenses relating to state property generally; penalties; trespass upon state correctional facility") and claims that Alvarado has violated the employee handbook and policy directives.  Doc. Ent. 18 at 2.  Plaintiff also describes the incident mentioned in his July 31, 2009 grievance (allegedly, Alvarado threatened plaintiff when plaintiff reported Alvarado to RUM William Deman for Alvarado wanting plaintiff to stab inmate Miller).  Among other things, plaintiff claims that Alvarado "has constantly threatened [plaintiff] and put [his] life in danger . . by calling [plaintiff] a 'snitch' in the presence of other inmates."  Plaintiff seeks "immediate release or protection from the [MDOC] as to the danger that [he] now face[s] on a daily basis."  Doc. Ent. 18 at 3.

3

**B.    Pending Motions**

Currently before the Court is defendant's November 18, 2009 motion for summary judgment under Fed. R. Civ. P. 56(b) for failure to exhaust administrative remedies. Doc. Ent. 12. Defendant argues that plaintiff "has not exhausted his claim against Defendant Alvarado through all three steps of the prison's grievance process, nor has he complied with the filing deadlines." Doc. Ent. 12 at 4.

Also before the Court is a letter from plaintiff, dated November 20, 2009 and filed November 30, 2009, in which plaintiff requests that the Court appoint counsel to represent him. Plaintiff claims he is indigent and needs representation to respond to defendant's dispositive motion. Plaintiff also claims he has exhausted administrative remedies. Doc. Ent. 13.[6]

On December 4, 2009, I entered an order setting the deadline for plaintiff's response to defendant's November 18, 2009 motion for January 5, 2010. Doc. Ent. 15. On January 19, 2010, plaintiff filed a response. Doc. Ent. 17.[7]

**C.    Fed. R. Civ. P. 56**

Summary judgment, pursuant to Fed. R. Civ. P. 56, may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is

---

[6]In his December 1, 2009 order referring this case to me to conduct pretrial proceedings, Judge Rosen construed plaintiff's letter as a motion for the appointment of counsel and as a response to defendant's motion for summary judgment. Doc. Ent. 14.

[7]This report treats plaintiff's response as timely. It is dated January 4, 2010, Doc. Ent. 17 at 2, and this report assumes that plaintiff's motion was delivered immediately to prison authorities for mailing. *See Houston v. Lack*, 487 U.S. 266, 276 (1988) (holding that a prisoner's "notice of appeal was filed at the time petitioner delivered it to the prison authorities for forwarding to the court clerk.").

4

entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of [the] essential elements of a cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties.

*Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (citing *Johnson v. Soulis,* 542 P.2d 867, 872 (Wyo. 1975) (quoting BLACK'S LAW DICTIONARY 881 (6th ed.1979)). "In evaluating a motion for summary judgment we view all evidence in the light most favorable to Plaintiff . . . and assess the proof to determine whether there is a genuine need for trial." *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1045 (6th Cir. 1998) (citations omitted).

The movant bears the burden of demonstrating the absence of all genuine issues of material fact. *See Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 861 (6th Cir. 1986). The moving party need not produce evidence showing the absence of a genuine issue of material fact. Rather, "the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party discharges that burden, the burden shifts to the non-moving party to set forth specific facts showing a genuine triable issue. Fed. R. Civ. P. 56(e); *Gregg*, 801 F.2d at 861.

"Although the nonmoving party 'may not rest upon the mere allegations or denials' of his pleading, Fed. R. Civ. P. 56(e), a verified complaint . . . satisfies the burden of the nonmovant to respond." *Thaddeus-X v. Blatter*, 175 F.3d 378, 385 (6th Cir. 1999). "[A] verified complaint . . . would have the same force and effect as an affidavit and would give rise to genuine issues of material fact." *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992). However, "[s]upporting

and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e). *See also Hamilton v. Roberts*, No. 97-1696, 1998 WL 639158, *5 (6th Cir. Sept. 10, 1998) (personal knowledge required); *Daniel v. Cox*, No. 96-5283, 1997 WL 234615, *2 (6th Cir. May 6, 1997) (conclusory assertions are insufficient for purposes of surviving summary judgment); *Wiley v. United States*, 20 F.3d 222, 226 (6th Cir. 1994) (citing *Daily Press, Inc. v. United Press Int'l*, 412 F.2d 126, 133 (6th Cir. 1969)) (cannot consider hearsay evidence).

"Demonstration of simply 'metaphysical doubt as to the material facts' is insufficient." *Kand Medical, Inc. v. Freund Medical Products, Inc.*, 963 F.2d 125, 127 (6th Cir. 1992), citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986). As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242 (1986), "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [non-movant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 246-250 (citations omitted); *see Celotex Corp.*, 477 U.S. at 322-23; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-587 (1986). The standard for summary judgment mirrors the standard for a directed verdict under Fed. R. Civ. P. 50(a). *Anderson*, 477 U.S. at 250. Consequently, a non-movant must produce evidence that would be sufficient to require submission to the jury of the dispute over the fact.

**D.** **The Court should grant defendant's motion for summary judgment and dismiss this case without prejudice.**

**1.** **Proper exhaustion is defined by MDOC PD 03.02.130.**

"In the event that a claim is, on its face, frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief, the court may dismiss the underlying claim without first requiring the exhaustion of administrative remedies." 42 U.S.C. § 1997e(c)(2).

The instant motion is based in part upon the United States Supreme Court's decision in *Woodford v. Ngo*, 548 U.S. 81 (2006). Doc. Ent. 20 at 10. Therein, the Supreme Court considered "whether a prisoner can satisfy the [PLRA's] exhaustion requirement, 42 U.S.C. § 1997e(a), by filing an untimely or otherwise procedurally defective administrative grievance or appeal." *Woodford*, 548 U.S. at 83-84. The Supreme Court held that the Prison Litigation Reform Act (PLRA) "exhaustion requirement requires proper exhaustion." *Woodford*, 548 at 93 (2006) (holding that "proper exhaustion," that is, exhaustion that complies with "critical procedural rules" such as time limits for filing grievances, is a precondition to any suit challenging prison conditions; failure to properly exhaust bars suit in federal court).

Later, the Supreme Court decided *Jones v. Bock*, 549 U.S. 199 (2007). Succinctly, the Court found that the PLRA does not: "[1] require a prisoner to allege and demonstrate exhaustion in his complaint, [2] permit suit only against defendants who were identified by the prisoner in his grievance, [or] [3] require courts to dismiss the entire action if the prisoner fails to satisfy the exhaustion requirement as to any single claim in his complaint." *Jones*, 549 U.S. at 203.

Of particular relevance to this case are the Court's conclusions that "failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints[,]" and "[c]ompliance with prison grievance

7

procedures . . . is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but *it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.*" *Jones*, 549 U.S. at 216-218 (emphasis added).

**2.     Plaintiff's attempt to grieve in accordance with MDOC PD 03.02.130.**

**a.**     Attached to defendant's motion is the current version of MDOC PD 03.02.130 ("Prisoner/Parolee Grievances"), effective July 9, 2007. Doc. Ent. 12-4. The policy directive provides several deadlines within which the grievance process should operate.

With respect to the grievance process generally, the policy directive provides:

> P.     Prior to submitting a written grievance, the grievant shall attempt to resolve the issue with the staff member involved within ***two business days*** after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control or if the issue falls within the jurisdiction of the Internal Affairs Division in Operations Support Administration. If the issue is not resolved, the grievant may file a Step I grievance. The Step I grievance must be filed within ***five business days*** after the grievant attempted to resolve the issue with appropriate staff.
>
> . . .
>
> S.     ***Grievances and grievance appeals at all steps shall be considered filed on the date sent by the grievant.*** The total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within ***120 calendar days*** unless an extension has been approved in writing by the Grievance Coordinator at Step I and/or Step II. An extension for a Step I or II response shall not exceed ***15 business days*** unless the grievance falls within the jurisdiction of the Internal Affairs Division. The Grievance Coordinator shall immediately notify the grievant in writing whenever an extension has been approved; the extension also shall be noted in the grievance response.
>
> T.     If a grievant chooses to pursue a grievance which has not been responded to by staff within required time frames, including any extensions granted, the grievant may forward the grievance to the next step of the grievance process within ***ten business days*** after the response deadline expired, including any extensions which have been granted.

8

MDOC PD 03.02.130 ¶¶ P, S, T (emphasis added).

The policy also contains time lines with respect to each of the steps of review. With respect to Step I, the policy directive provides that "[w]ithin *five business days* after attempting to resolve a grievable issue with staff, a grievant may send a completed Prisoner/Parolee Grievance (CSJ-247A) to the Step I Grievance Coordinator designated for the facility, field office, or other office being grieved; if the office being grieved does not have a designated Grievance Coordinator, the grievance shall instead be sent to the Step I Grievance Coordinator for the facility in which the grievant is housed or appropriate field office for processing. A grievant in a CFA [Correctional Facilities Administration] facility alleging conduct under the jurisdiction of the Internal Affairs Division may send the grievance to the inspector for investigation and processing as set forth in Paragraph Q." MDOC PD 03.02.130 ¶ V (emphasis added). It also provides:

> After receipt of the grievance, the Grievance Coordinator shall determine if the grievance should be rejected pursuant to this policy and, if so, sign and return the grievance to the grievant with an explanation as to why it was rejected. In CFA, if the grievance is being rejected, the Grievance Coordinator's supervisor shall review the reason for the rejection to ensure it is in accordance with policy; both the Grievance Coordinator and the supervisor shall sign the grievance before returning the grievance to the grievant. ***If the grievance is accepted, the Grievance Coordinator shall assign an appropriate respondent and identify the date by which the response is due.*** The respondent shall generally be the supervisor of the person being grieved except for grievances involving the Parole Board; the Parole Board Chairperson shall designate the respondent for grievances involving the Parole Board. The due date shall be within ***15 business days*** after receipt of the grievance unless an extension is granted pursuant to Paragraph S. If the issue is of an emergent nature, the Grievance Coordinator may order a Step I response within *two business days*. The Grievance Coordinator may respond at Step I to grievances which require only minimal investigation or rejected for reasons authorized by this policy. However, if the Grievance Coordinator responds to the merits of the grievance, a grievance interview must be conducted as required in Paragraph Y.

MDOC PD 03.02.130 ¶ X (emphasis added).

With respect to Step II, the policy directive provides:

BB. A grievant may file a Step II grievance if s/he is dissatisfied with the response received at Step I or if s/he did not receive a timely response. To file a Step II grievance, the grievant must request a Prisoner/Parolee Grievance Appeal (CSJ-247B) from the Step I Grievance Coordinator and send the completed form to the Step II Grievance Coordinator designated for the facility, field office, or other office being grieved within *ten business days* after receiving the Step I response or, if no response was received, within *ten business days* after the date the response was due, including any extensions. If the office being grieved does not have a designated Grievance Coordinator, the grievant is to send the grievance to the Step II Grievance Coordinator for the facility in which s/he is housed or appropriate field office for processing.

CC. The Grievance Coordinator shall log each Step II grievance received, including those which may be rejected. Where available, the Grievance Coordinator shall use a computerized grievance tracking system to do so. The Grievance Coordinator shall determine if the grievance should be rejected pursuant to this policy and, if so, return the grievance to the grievant with an explanation as to why it was rejected. ***If accepted, the Grievance Coordinator shall assign an appropriate respondent and indicate the date by which the response is due.*** The due date shall be within *15 business days* after receipt of the grievance, unless an extension is granted as set forth in Paragraph S.

MDOC PD 03.02.130 ¶¶ BB, CC (emphasis added).

Finally, with respect to Step III, the policy directive provides that "[a] grievant may file a Step III grievance if s/he is dissatisfied with the Step II response or does not receive a timely response. To file a Step III grievance, the grievant must send a completed Step III grievance, using the Prisoner/Parolee Grievance Appeal form (CSJ-247B), to the Grievance and Appeals Section within *ten business days* after receiving the Step II response or, if no response was received, within *ten business days* after the date the response was due, including any extensions." MDOC PD 03.02.130 ¶¶ FF.

**b.** In his complaint, plaintiff contends he has written "several grievances about this matter but nothing has been done[.]" Doc. Ent. 1 at 3. However, the record only includes a copy of the

10

Step I grievance labeled RGC-09-08-00899-17z, which plaintiff completed on July 31, 2009 and wherein plaintiff states that he fears for his life, because "of a serious incident that happen[ed] a while back involving . . . another inmate & [C/Os Alvarado and Barkley]." According to plaintiff, he "took some paper work to . . . RUM William Deman proving that [Alvarado] tried to get [plaintiff] to stab[] [inmate Miller]." Plaintiff claims he was written a notice of intent "after wri[t]ing a statement against [Alvarado] & [plaintiff] was [thrown] into the [hole] and later roadout and was written a major [misconduct] ticket[,]" regarding which he was later found not guilty. Since this incident, plaintiff claims, he has "been threaten[ed] by [Alvarado] and intimidated by being called a snitch[.]" Doc. Ent. 12-6 at 2-3.[8]

Plaintiff's grievance was not received at Step I until August 11, 2009. Doc. Ent. 12-6 at 3. On August 25, 2009, Inspector Kevin Lindsey responded. He characterized plaintiff's claims as the "staff at RGC are threatening his life based on an incident that occurred in May 2005." Doc. Ent. 12-6 at 4. Lindsey concluded that "[t]here is no information available, witnesses, further information that leads this investigator to believe that BRADY's claims have merit. Prisoner BRADY desires to be sent back to Ingham County to 'feel safe'. There is no information that proves prisoner claim therefore grievance is denied." The response was reviewed by Deputy Warden Cascelia Brown-Brandon on August 27, 2009. Doc. Ent. 12-6 at 4.

There is no copy of the Step II grievance appeal or response on the record. However, information about Step II is found in the October 8, 2009 affidavit of Michael A. Trouten, Corrections Resident Representative (CRR) of the RGC. Specifically, Trouten attests:

---

[8]Attached to plaintiff's complaint is a "duplicate of the original grievance." Doc. Ent. 1-2 at 1. However, this report refers to the copies of the grievances attached to defendant's motion, because these copies (Doc. Ent. 12-6 at 2-3) appear to be the ones actually processed.

> In the instant matter the grievant filed his Step I grievance with the Step I Grievance Coordinator on **August 11, 2009**. The grievance was assigned an identifier number RGC 09 08 0899 17z. The grievance alleged that C/O Alverado was making verbal threats towards the grievant. The Step I grievance was assigned to Inspector Lindsey for investigation. The Step I grievance was returned by Inspector Lindsey to the Step I Grievance Coordinator on **September 01, 2009** and subsequently that same day the grievance and response was returned to the grievant. The grievance was denied based on the investigation that was completed by Inspector Lindsey. On **September 14, 2009** the grievant requested and was sent a Step II appeal form. The Step II appeal form was due back to the Grievance Coordinators office on or before **September 28, 2009**. The Step II appeal form was received in the Grievance Coordinator's office on [**October 8, 2009**] and shall be considered untimely; however, based on the allegations the complaint will be looked into and addressed. The grievant has yet to exhaust his administrative remedies as he has not received his Step II response nor has he appealed to Step III.

Doc. Ent. 12-5 ¶ 5 (emphasis added).[9]

**3.      The parties' arguments**

Citing 42 U.S.C. § 1997e(a), *Woodford* and *Jones*, defendant argues that "[i]n the present case, the MDOC grievance policy sets forth specific deadlines for the filing of the various stages of the grievance process. Not only has Brady failed to comply with these filing deadlines by untimely filing the Step II appeal of his grievance against C/O Alvarado, he has also failed to complete the entire 3-step grievance procedure prior to filing this action. Given these facts, it is clear Brady has failed to properly exhaust his administrative remedies as to his claim of

---

[9]The record also contains evidence of grievances filed in 2005 and 2006. *See* October 14, 2009 affidavit of Richard B. Stapleton, Administrator, Office of Legal Affairs, MDOC (Doc. Ent. 12-3). For example, the October 13, 2009 grievance inquiry attached to the Stapleton affidavit (Doc. Ent. 12-3) shows that grievance RGC—0-17e was received on January 21, 2005 and was returned on February 3, 2005.

Also, Stapleton attests that he has "caused a search of the database relevant to step III grievance appeals filed by the plaintiff[,]" and states that "[t]he plaintiff has only filed one grievance through to Step III: SMN[Egeler Correctional Facility]-2006-09-1403-12f." Doc. Ent. 12-3 ¶ 14. The grievance inquiry shows that SMN-2006-09-1403-12f, dated September 18, 2006, was received on November 15, 2006, was denied, and was returned on June 11, 2007. Doc. Ent. 12-3 at 3.

12

harassment and retaliation against C/O Alvarado. Therefore, dismissal of the Complaint is required." Doc. Ent. 12 at 10.

Plaintiff claims he has exhausted all administrative remedies. He claims he was not sent a response from his Step II or his Step III, and he claims to have contacted CFA Deputy Director Dennis Straub[10] and Legislative Corrections Ombudsman Keith Barber.[11] Plaintiff also claims to have contacted Deputy Warden Cascelia Brown-Brandon and Inspector Kevin Lindsey. Furthermore, plaintiff claims, he "put in for a pardon and commutation of sentence" to the Governor of the State of Michigan. Doc. Ent. 13.

As for the timing of his Step II grievance appeal, plaintiff contends that Alvarado wants to claim that plaintiff "defaulted somehow as to [Alvarado's] neglect in providing an answer [so that] [p]laintiff could respond in an adequate time." It is plaintiff's position that MDOC PD 03.02.130 requires the respondent "to answer in a timely ma[nn]er, [so that] the grievance process can move freely and without complications." Doc. Ent. 17 ¶ 2. Furthermore, plaintiff claims, MDOC policy provides that "an inmate does not have to file a grievance at all, when there is a threat to security or an individual['s] safety[.]" Plaintiff also contends that "a grievant has the choice to contact the proper management directly as Plaintiff did."[12] Plaintiff claims he filed RGC-00899 to create a record. Doc. Ent. 17 ¶ 3. Plaintiff feels that "[the MDOC] was trying to hush the incident up," and he prays for "an investigation and hearing and possible criminal charges against [Alvarado]." Doc. Ent. 17 ¶ 4.

---

[10]*See* http://www.michigan.gov/corrections/0,1607,7-119-1381-77842--,00.html.

[11]*See* http://www.michigan.gov/documents/corrections/2009-01-08_261989_7.pdf.

[12]According to the grievance form, plaintiff tried to speak with RUMs Pieron and Deman about this issue prior to writing the grievance. Doc. Ent. 12-6.

**4.     Conclusion**

**a.     The Court should grant plaintiff's motion for summary judgment for failure to exhaust administrative remedies on the basis that plaintiff filed his lawsuit before the administrative process was completed.**  Doing so is contrary to the Sixth Circuit's decision in *Freeman v. Francis*, 196 F.3d 641 (6th Cir. 1999), wherein the Court stated:

> While we recognize that plaintiff made some attempts to go through the prison's grievance procedures, we must dismiss plaintiff's complaint because he filed his federal complaint before allowing the administrative process to be completed. The plain language of the statute makes exhaustion a precondition to filing an action in federal court ("No action shall be brought ... until such administrative remedies as are available are exhausted."). *Brown v. Toombs*, 139 F.3d 1102 (6th Cir. [1998])[.[13]]  The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit. *Larkins v. Wilkinson*, [No. 97-4183], 1998 WL 898870 at *2 (6th Cir. Dec. 17, 1998)[.]  In *Larkins*, we dismissed the plaintiff's complaint where his "attempt to exhaust his available administrative remedies only after filing suit in federal court ignores the clear mandate of § 1997e(a) which requires exhaustion ... *prior* to filing suit in federal court." (Emphasis added.) *See also Perez v. Wisconsin Dep't of Corrections*, 182 F.3d 532, 533 (7th Cir.1999) (case remanded with instruction to dismiss for failure to exhaust administrative remedies).

*Freeman*, 196 F.3d at 645.  The Sixth Circuit remanded "the case to the district court and direct[ed] that the plaintiff's case be dismissed without prejudice for failure to exhaust administrative remedies." *Id*.

The same should be done here.  Plaintiff filed this case in the Western District of Michigan on August 12, 2009 - just twelve (12) days after he completed his Step I grievance

---

[13]*Brown* has been overruled on other grounds.  In *Brown*, *inter alia*, the Sixth Circuit stated that "prisoners filing § 1983 cases involving prison conditions must allege and show that they have exhausted all available state administrative remedies." *Brown*, 139 F.3d at 1104.  However, in *Jones*, the Supreme Court concluded that "failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones*, 549 U.S. at 216.

14

form in RGC-09-08-00899-17z and just one (1) day after the Step I grievance form was received at Step I (Tuesday, August 11, 2009). Pursuant to the MDOC policy directive governing prisoner grievances, respondent's answer to the Step I grievance was due on or about Tuesday, September 1, 2009. *See* MDOC PD 03.02.130 ¶ X ("[t]he due date shall be within 15 business days after receipt of the grievance unless an extension is granted pursuant to Paragraph S.").[14] Therefore, plaintiff's August 12, 2009 complaint, which is dated August 5, 2009, Doc. Ent. 1 at 5, dramatically preempts the exhaustion process, as the complaint was filed before the response to the Step I grievance form was due.

**2.      The timeliness issues which arise after the inception of plaintiff's pursuit of the administrative process for RGC-00899 do not change my conclusion. This is true whether it is defendant's claim that plaintiff was untimely and incomplete in his execution of the grievance process or plaintiff's claim that the prison did not timely return the response to his Step I grievance or did not timely respond to his requests for grievance appeal forms.**

**a.**      From the defendant's perspective, if plaintiff's Step II grievance was untimely or if his pursuit of RGC-00899 was incomplete, the Court should conclude that plaintiff has not achieved proper exhaustion pursuant to 42 U.S.C. § 1997e(a) as discussed in *Woodford* and *Jones*. Doc. Ent. 12 at 10.

As noted above, plaintiff completed the Step I grievance on July 31, 2009 and it was received at Step I on August 11, 2009. The Step I response was dated August 25, 2009 and reviewed August 27, 2009. According to Trouten, it was returned to plaintiff on Tuesday,

---

[14]According to Trouten, the Step I was returned to plaintiff on Tuesday, September 1, 2009. Doc. Ent. 12-5 ¶ 5.

15

September 1, 2009. Doc. Ent. 12-5 ¶ 5. If that is true, then plaintiff's Step II grievance appeal was due on or about Tuesday, September 15, 2009. *See* MDOC PD 03.02.130 ¶ BB ("within ten business days after receiving the Step I response ").

Then, on September 9, 2009, plaintiff completed a Prisoner Kite, which he claims to be his second request for an appeal form for RGC-09-08-00899-17z. A handwritten note on the kite appears to indicate that the kite was received and the appeal form was sent on Monday, September 14, 2009. Doc. Ent. 12-6. This is consistent with the Trouten affidavit, which further states that "[t]he Step II appeal form was due back to the Grievance Coordinators office on or before [Monday] September 28, 2009." Doc. Ent. 12-5 ¶ 5.

However, summary judgment should not be granted on the basis that the Step II grievance appeal received on October 8, 2009 was untimely. First, as noted above, the Court need not reach this question, because plaintiff pre-empted the grievance process by filing the instant complaint before the response to his Step I grievance was due. In doing so, he failed to properly exhaust his claims in accordance with 42 U.S.C. § 1997e(a) before he filed his complaint.

Second, even if plaintiff had not pre-empted the grievance process and even if the Step II grievance appeal form was due on September 28, 2009, the fact that it was allegedly received in the Grievance Coordinator's Office on October 8, 2009 does not, necessarily, render it untimely. MDOC PD 03.02.130 ¶ S provides that "[g]rievances and grievance appeals at all steps shall be considered filed on the date sent by the grievant." And, Paragraph CC provides that "[i]f accepted, the Grievance Coordinator shall assign an appropriate respondent and indicate the date by which the response is due."

16

Defendant's November 18, 2009 dispositive motion does not include a copy of the allegedly tardy October 8, 2009 Step II grievance appeal form. Therefore, the Court cannot determine whether there was any lag time between the date plaintiff completed the Step II form (*i.e.*, July 31, 2009 in RGC-00899 at Step I) and October 8, 2009 - the date the Step II form was received at Step II (*i.e.*, August 11, 2009 in RGC-00899 at Step I). The Court would be in a better position to determine whether there is a genuine issue of material fact as to the timeliness of plaintiff's Step II grievance appeal form in RGC-00899 if the Court had a copy of it. Ideally, a dispositive motion based upon exhaustion should include copies of the forms upon which the motion relies (*see* Doc. Ent. 12 at 9) and to which a supporting affidavit refers (*see* Doc. Ent. 12-5 ¶ 5).

This time line is not clarified by plaintiff's January 19, 2010 response, wherein he mentions a September 28, 2009 grievance response. Plaintiff does not indicate if this is the date he received the Step I grievance response or if this is the date he sent his Step II grievance appeal. The Court can only guess that plaintiff means the former, because of his statement that his Step I grievance "was held until the due date was past due for [him] to file to the next level." Doc. Ent. 17 ¶ 2. If plaintiff means the latter, it may have been timely under MDOC PD 03.02.130 ¶ S.

**b.** In response to defendant's timeliness and completeness arguments, plaintiff raises the issue that the response to his Step I grievance was not returned in a timely manner and the issue that his requests for grievance appeal forms were not timely addressed. For example, plaintiff claims that his "Step (I) grievance was held until the due date was past due for [him] to file to the

next level." Doc. Ent. 17 ¶ 2.[15]

Plaintiff also claims that if his Step II grievance appeal form had been given to him on time, then he "would have submitted [his Step II grievance appeal] in a timely manner." Doc. Ent. 17 ¶ 2. Likewise, plaintiff claims, he "cannot file a [Step III grievance appeal] if he has been unable to receive the form for filing [a Step III grievance appeal]," as it "is on the same form as [the Step II grievance appeal]." He further states that "[e]ven though [he] did try to proceed in all 3 stages of the grievance process he was not entitled to do so though. [He] was transferred from [RGC] and when [he] tried to contact facility to receive step III grievance forms, [his] request was never [fulfilled]." Doc. Ent. 17 ¶ 3.

**3.     These issues related to the grievance appeal process need not be addressed here, because they arose *after* plaintiff pre-empted the grievance process by filing his lawsuit before the response to his Step I grievance was due.**  Accordingly, the Court should dismiss this case without prejudice to plaintiff refiling the case once he has exhausted his administrative remedies as to the claims contained in the instant complaint.

---

[15]At some point, plaintiff would have been able to proceed to the next level without having received a response. *See* MDOC PD 03.02.130 ¶ T ("T. If a grievant chooses to pursue a grievance which has not been responded to by staff within required time frames, including any extensions granted, the grievant may forward the grievance to the next step of the grievance process within ***ten business days*** after the response deadline expired, including any extensions which have been granted.").

For example, if the Step I grievance was received by the Grievance Coordinator's Office on Tuesday, August 11, 2009, it appears that, as a general matter, a Step I response would have been due on Tuesday, September 1, 2009. MDOC PD 03.02.130 ¶ X ("The due date shall be within ***15 business days*** after receipt of the grievance unless an extension is granted pursuant to Paragraph S. If the issue is of an emergent nature, the Grievance Coordinator may order a Step I response within ***two business days***."). Therefore, it appears that if plaintiff had not received the Step I response by its September 1, 2009 due date, then he may have forwarded his Step I grievance to Step II by September 15, 2009.

Likewise, the Court should deny plaintiff's motion for the appointment of counsel (Doc. Ent. 13) without prejudice to plaintiff renewing this request should he refile this complaint.

## III. NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505, 508-09 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981). Filing of objections that raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995); *Willis v. Sullivan*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231, American Federation of Teachers, AFL-CIO*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. E.D. Mich. LR 72.1(d)(3). The response shall not be more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives<br>
PAUL J. KOMIVES<br>
UNITED STATES MAGISTRATE JUDGE

Dated 4/26/10

> The undersigned certifies that a copy of the foregoing order was served on the attorneys of record and by electronic means or U.S. Mail on April 26, 2010.
>
>        s/Eddrey Butts
>        Case Manager